Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James M. Rosenbaum | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 98 C 4924 | **DATE** | 8/31/2000 |
| **CASE TITLE** | Coolsavings vs. E-Centives, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Report and Recommendation recommending that E-Centives' Motion for Disqualification be denied is hereby submitted to Judge Rosenbaum.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP - 1 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 162 |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | IS docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | 00 AUG 31 PM 3:54 | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

COOLSAVINGS.COM INC,

    Plaintiff,

v.

E-CENTIVES, INC. and
ZIFF-DAVIS, INC.

    Defendants.

Case No. 98 C 4924

Judge James M. Rosenbaum
Magistrate Judge Nan R. Nolan

To: The Honorable James M. Rosenbaum
United States District Court Judge

## REPORT AND RECOMMENDATION

Nan R. Nolan, United States Magistrate Judge

Plaintiff coolsavings.com inc. ("Coolsavings") sues Defendant e-centives, Inc. ("E-Centives") for infringement of Coolsavings' U.S. Patent No. 5,761,648 ("648 patent"). The law firm of Niro, Scavone, Haller & Niro (the "Niro firm") represented Coolsavings in the prosecution of the '648 patent and represents Coolsavings in the reexamination proceeding at the Patent and Trademark Office ("PTO"). The Niro firm also represents Coolsavings in this case. E-Centives raises a number of defenses here, including that the '648 patent is unenforceable by reason of inequitable conduct before the PTO. E-Centives argues that the failure of Coolsavings and the Niro firm to bring two of the Von Kohorn patents to the attention of the PTO in a manner that would allow the PTO to consider them constitutes inequitable conduct. Baxter Int'l, Inc. v. McGaw, Inc., 149 F.3d 1321, 1327 (Fed. Cir. 1998) (stating inequitable conduct includes "affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive."). E-Centives moves to disqualify the Niro firm from representing

162

Coolsavings on the ground that Thomas G. Scavone and Michael P. Mazza, lawyers from the Niro firm, will likely be called as witnesses at trial concerning E-Centives' inequitable conduct defense.[1] This matter is now before the Court for a recommended ruling on E-Centives' Motion for Disqualification. E-Centives' Motion should be denied.

## I. BACKGROUND

The following facts are taken from Scavone's and Mazza's declarations submitted in opposition to the disqualification motion. Scavone and Mazza have represented Coolsavings or its predecessors in interest since 1995. Scavone Dec. ¶ 4; Mazza Dec. ¶ 1. Scavone and Mazza evaluated the patentability of Coolsavings' invention of an interactive marketing network and process using electronic certificates, typically in the form of coupons. Scavone Dec. ¶¶ 5, 6. On July 25, 1995, Scavone and Mazza prepared a patent application and filed it with the PTO. Scavone Dec. ¶ 6; Coolsavings' Opposition, Ex. A.

Scavone and Mazza first learned of the Von Kohorn patents in early 1997 when Coolsavings received a letter from a company called Catalina advising Coolsavings that Mr. Von Kohorn or his company had sued Catalina. Scavone Dec. ¶ 8; Mazza Dec. ¶ 5. Catalina requested that Coolsavings assist Catalina in the defense of that case. Id. At that time, Mazza reviewed some of the Von Kohorn patents. Id. Scavone and Mazza determined that "there was no good reason" for Coolsavings to participate in the Catalina litigation. Scavone Dec. ¶ 8. Coolsavings declined Catalina's request that Coolsavings join the defense of the lawsuit. Id.; Mazza Dec. ¶ 5. Scavone

---

[1] At oral argument, E-Centives' counsel clarified that it is not seeking disqualification of the entire Niro firm. Tr. 26, 55. Thus, the only issue presented is whether Scavone should be disqualified from representing Coolsavings at trial because Mazza has not filed an appearance in this action.

and Mazza understood that the Von Kohorn patents did not disclose any "targeting" of coupons to consumers based on profile data the consumers had provided. Id. Scavone and Mazza view "targeting" as a fundamental aspect of Coolsavings' invention. Id.

The '648 patent was allowed on January 19, 1998, and Coolsavings paid the issue fee on February 5, 1998. Scavone Dec. ¶ 9. Certain Von Kohorn patents came to Scavone's and Mazza's attention again in Spring of 1998 when Mr. Von Kohorn's patent attorney contacted Coolsavings regarding Coolsavings taking a license under the patents. Scavone Dec. ¶ 9; Mazza Dec. ¶ 5. After being contacted by Von Kohorn's attorney, Mazza evaluated the Von Kohorn patents and concluded that they were less relevant than the Nichtberger patents considered by the '648 patent Examiners. Scavone Dec. ¶ 10; Mazza Dec. ¶ 5. Negotiations for a license from Von Kohorn began in late April or May 1998 and concluded in July 1998 with Coolsavings taking a license from Mr. Von Kohorn under the two patents the PTO has relied upon in the reexamination of the '648 patent.

Scavone and Mazza determined that there was no duty to submit the Von Kohorn patents to the '648 patent Examiners. Scavone Dec. ¶ 10; Mazza Dec. ¶ 5. Scavone also decided against withdrawing the '648 patent application from issue because he believed the Von Kohorn patents were not material. Scavone Dec. ¶ 11. Scavone and Mazza decided, however, to submit the Von Kohorn patents to the PTO on May 22, 1998 because they knew that "inequitable conduct before the U.S. Patent and Trademark Office is raised as a defense in virtually every patent case." Scavone Dec. ¶ 12; Mazza Dec. ¶ 5. Thus, according to Scavone, he wanted to give the PTO the opportunity to review the Von Kohorn patents even though he knew that the applicable regulations provided that the Examiners were not required to consider the Von Kohorn patents. Scavone Dec. ¶ 12. Scavone and Mazza maintain that they did not withhold the Von Kohorn patents in a purposeful intent to

deceive or mislead the PTO. Scavone Dec. ¶ 13; Mazza Dec. ¶ 13. Rather, they believed and continue to believe that the Von Kohorn patents are not material to the prosecution of the '648 patent. Id.

## II. DISCUSSION

### A. Disqualification

The Seventh Circuit has recognized that disqualification is "a 'drastic measure which courts should hesitate to impose except when absolutely necessary.'" Owen Wangerin, 985 F.2d 312, 317 (7th Cir. 1993) (quoting Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 721 (7th Cir. 1982)). Motions to disqualify counsel "should be viewed with extreme caution for they can be misused as techniques of harassment." Freeman, 689 F.2d at 722.

In moving for disqualification, E-Centives relies on the "advocate-witness" rule which prohibits lawyers from acting as an advocate and a witness in the same proceeding except under certain limited circumstances. Rule 83.53.7(b) of the rules of professional conduct for the Northern District of Illinois provides:

> If a lawyer knows or reasonably should know that the lawyer may be called as a witness other than on behalf of the client, the lawyer may act as an advocate in a trial or evidentiary proceeding unless the lawyer knows or reasonably should know that the lawyer's testimony is or may be prejudicial to the client.

Testimony is prejudicial when the "projected testimony of a lawyer or firm member [is] sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." Lamborn v. Dittmer, 873 F.2d 522, 531 (2d Cir. 1989) (quoting Freeman v. Kulicke & Soffa Indus., Inc. 449 F. Supp. 974, 977 (E.D.Pa. 1978)); Interactive Coupon Marketing Group, Inc. v. H.O.T. Coupons, LLC., 1999 WL 409990, *3 (N.D. Ill. 1999). E-Centives bears the burden of

demonstrating that Scavone's testimony would substantially prejudice Coolsavings. H.O.T. Coupons, LLC, 1999 WL 409990 at *3.

E-Centives has not met its burden. Scavone and Mazza have declared that they believe the Von Kohorn patents are not material to the '648 patent because the Von Kohorn patents fail to disclose the "targeting" of selected coupon offers to consumers based on profile data the consumers provide. They view "targeting" as an important element of the Coolsavings' patent. Mazza and Scavone also determined that the Von Kohorn patents were less relevant than two Nichtberger patents which had previously been cited to the Examiners. Mazza and Scavone further declared that they did not withhold the Von Kohorn patents in a purposeful intent to deceive or mislead the PTO or any examiners. This testimony by Scavone and Mazza is consistent with Coolsavings' position that its '648 patent is valid and enforceable.

E-Centives has not presented any evidence indicating that Scavone's and Mazza's testimony may contradict or undermine any factual assertions or account of events offered by Coolsavings in this litigation. Rather, E-Centives speculates that: 1) "it is possible that the Niro firm's failure to cite the patents was negligent," 2) "the firm may have devised the strategy to delay disclosing the references to the PTO to the disadvantage of its client," or 3) "the decision to delay came from the client, possibly at odds with advice provided by the Niro firm." E-Centives' Memo., p. 9. E-Centives also theorizes that Coolsavings' attorneys may have failed to disclose the Von Kohorn patents "out of concern about not getting paid, or out of a concern that submission would adversely affect their equity by delaying or preventing the grant of a patent." E-Centives' Reply, pp. 5-6. Despite having taken Mazza's deposition and having the declarations of Scavone and Mazza, none of these assertions are supported by any evidence in the record.

E-Centives relies on Personalized Mass Media Corp. v. The Weather Channel, Inc., 899 F. Supp. 239, 243-44 (E.D. Va. 1995) and Summagraphics Corp. v. Sanders Assoc, Inc., 19 U.S.P.Q.2d 1859, 1861-62 (D. Conn. 1991) to support its claim that the testimony of the Niro firm will be prejudicial to Coolsavings. Neither case assists E-Centives. The Court finds the Personalized Mass Media case unpersuasive because the district court applied an incorrect prejudice standard. In Personalized Mass Media, a patent infringement case, the defendant moved to disqualify plaintiff's counsel and the law firm in which he was a partner from serving as plaintiff's trial counsel because the plaintiff and its counsel allegedly engaged in inequitable conduct by failing to disclose prior art research and references to the PTO. Defendant relied on the advocate-witness rule in moving to disqualify. The district court held, among other things, that the testimony of plaintiff's attorney could be prejudicial on the issue of inequitable conduct.

The Personalized Mass Media court reasoned that the defendant made the requisite showing on the prejudice factor because "[i]f the jury were to believe that material was deliberately withheld, it would be prejudicial to [the plaintiffs] because proof of such inequitable conduct would render [the plaintiff's] patents unenforceable." Personalized Mass Media, 899 F. Supp. at 244. The district court similarly concluded that if the withholding of pertinent foreign art was deliberate and involved material references, "the prejudice to [the] plaintiff is obvious." Id. Whether the outcome will be prejudicial or adverse to the client if the trier of fact finds the material was deliberately withheld from the PTO misstates the standard of prejudice. Rather, the court should have considered whether the attorney's testimony "would contradict or undermine his client's factual assertions." Lamborn, 873 F.2d at 531. The prejudice standard applied by the Personalized Mass Media court would be met in every patent case involving an allegation of inequitable conduct. It is always possible to

-6-

conclude at the time of the disqualification determination that the trier of fact may believe the attorney deliberately withheld material information which would render the patent unenforceable.

The other case relied on by E-Centives, <u>Summagraphics</u>, is distinguishable from the present case. Summagraphics moved pursuant to the advocate-witness rule to disqualify Sanders' trial counsel on the ground that Sanders' in-house counsel and two of its trial attorneys allegedly committed inequitable acts in connection with the prosecution of the applications for reissue and reexamination of Sanders' patent and they were likely to be called as witnesses. Sanders' counsel had given conflicting opinions regarding whether Sanders' patent was valid over another patent (the "Anderson patent."). Counsel's original opinion that Sanders' patent was not valid over the Anderson patent would contradict Sanders' position in the litigation regarding the validity of its patent. Thus, the district court held that counsel's proposed testimony was prejudicial to Sanders. Unlike <u>Summagraphics</u>, there is no evidence here that Scavone or Mazza have opined that the '648 patent is invalid or unenforceable or will offer any testimony adverse to Coolsavings' factual assertions or account of events in the litigation.[2]

### B. **Bifurcation**

Alternatively, even if E-Centives met the prejudice standard, the Court recommends bifurcation of E-Centives' inequitable conduct defense from the issues of infringement and validity rather than disqualifying the Niro firm and depriving Coolsavings of counsel of its choice at this late stage of the litigation.[3] Under Fed. R. Civ. P. 42(b), the Court has discretion to bifurcate the

---

[2] At oral argument E-Centives indicated that it was not pursuing the Niro firm's ownership interest in Coolsavings and any alleged violations of the protective order as grounds for disqualification. <u>See</u> August 18, 2000 Transcript ("Tr.") 24-26.

[3] This case is set for trial in December of 2000.

-7-

inequitable conduct claim from the other issues in the case "in furtherance of convenience or to avoid prejudice . . . always preserving inviolate the right of trial by jury . . . ." Gardco Manufacturing, Inc. v. Herst Lighting Co., 820 F.2d 1209, 1212 (Fed. Cir. 1987) (stating "a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management. It may, therefore, order a trial on unenforceability separate from an infringement trial that may involve an invalidity defense."). The issue of inequitable conduct is equitable in nature and not a jury question. Id.; Paragon Podiatry laboratories, Inc. v. KLM Laboratories, Inc., 984 F.2d 1182, 1190 (Fed. Cir. 1993) (holding "[t]he defense of inequitable conduct in a patent suit, being entirely equitable in nature, is not an issue for a jury to decide.").

Coolsavings maintains that any possible prejudice which might arise from calling Coolsavings' counsel as witnesses will be avoided by bifurcation because no attorney will appear before the jury as both advocate and witness. The Seventh Circuit has rejected Coolsavings' suggestion that the advocate-witness rule "has no application to proceedings tried to a judge" but has also recognized that the rationales for the rule "may be less persuasive" in a hearing before a judge than in a jury trial setting. United States v. Johnston, 664 F.2d 152, 156-57 (7th Cir. 1981). The following rationales for the advocate-witness rule have been identified: 1) it eliminates the possibility that the attorney will not be a fully objective witness, (2) in the case of a Government attorney, the rule eliminates the possibility that the prestige of the Government will artificially enhance the attorney's credibility as a witness, (3) it reduces the risk that the trier of fact will confuse the roles of advocate and witness and erroneously grant testimonial weight to an attorney's arguments, (4) it reflects a broad concern that the administration of justice not only be fair, but also appear fair, and (5) it prevents a Government attorney, who is "expected to adhere to the highest

standards of professional behavior and to be worthy of public trust and confidence" from running "the risk of impeachment or otherwise being found not credible," and thereby disgracing his office. United States v. Morris, 714 F.2d 669, 671 (7th Cir. 1983) (quoting United States v. Johnston, 690 F.2d 638, 642-43 (7th Cir. 1982)).

These concerns have "little weight" in the present case. Morris, 714 F.2d at 672; see also H.O.T. Coupons, LLC, 1999 WL 409990 at *4 (stating "[t]he primary problem with attorneys as witnesses comes at the time of the jury trial."). The second and fifth rationales for the advocate-witness rule do not apply in a patent infringement action. Moreover, the possibility that Scavone will not be a fully objective witness should not prevent bifurcation here because the district court is "better equipped than a jury to take account of a witness-[advocate's] adversarial role in weighing the objectivity of the testimony." Johnston, 664 F.2d at 157. Similarly, this Court is confident that the trial judge will not be confused as to whether Scavone is speaking as an advocate or a witness and will not grant inappropriate testimonial weight to his arguments. Morris, 714 F.2d at 672 (stating "[a] judge is unlikely to be confused by the dual appearance as advocate and witness); Johnston, 664 F.2d at 157 (indicating "[a] judge may also be less apt than a jury to confuse the roles of witness and prosecutor."). The only remaining concern of public confidence in the fair administration of justice should not bar Scavone from testifying before the trial judge on the inequitable conduct issue where a bifurcated hearing would eliminate the substantial prejudice to Coolsavings of disqualifying its counsel this late in the proceedings. Morris, 714 F.2d at 672 (stating concern for fair administration of justice "is not so great that a court abuses its discretion by allowing counsel to appear as both advocate and a witness.").

E-Centives opposes bifurcation of its inequitable conduct claim. E-Centives correctly points out that bifurcation of inequitable conduct is not appropriate when there is a commonality of issues between the inequitable conduct defense and issues to be tried to the jury and a prior finding by the court could affect later jury findings. The Supreme Court has held that where a case involves both legal and equitable issues, "only under the most imperative circumstances ... can the right to a jury trial of legal issues be lost through the *prior* determination of equitable claims." Beacon Theaters v. Westover, 359 U.S. 500, 510-11 (1959) (emphasis added). To preserve E-Centives' right to a jury trial on all legal claims, the Court recommends allowing the jury to decide any common factual issues *before* the trial judge decides the equitable claim. Thus, following the jury trial, the trial judge can incorporate the jury's findings on any common factual issues into its determination of the inequitable conduct claim. Herman v. William Brooks Shoe Co., 49 U.S.P.Q.2d 1361 (S.D. N.Y. 1998).

The fact that a commonality of issues may exist between the inequitable conduct defense and issues to be tried to the jury does not prevent bifurcation and a prior jury trial unless Scavone's testimony would be required on any of the issues to be tried to the jury. In its reply memorandum, E-Centives maintains that the following three issues require factual findings by the jury that are essentially the same as those required for its inequitable conduct defense: 1) "anonymity" of the user feature; (2) E-Centives' anticipation defense; and (3) the significance of licenses of the '648 patent. E-Centives' Reply, pp. 12-13. At oral argument, the Court asked E-Centives' counsel to explain how Scavone's testimony would be necessary and relevant to these three issues. E-Centives first maintains that it will present evidence in its invalidity defense that Coolsavings' original application failed to describe the claims of "anonymity" of the user which was added to the claims in 1998. E-

Centives concludes that "why and when the attorneys chose to cite the Von Kohorn '874 patent and their actions taken during the prosecution in relation to the anonymity feature of the claims will be an issue relevant to the invalidity of the patent based on §112, ¶ 1." E-Centives' Reply, p. 12. At oral argument, E-Centives failed to specifically explain why testimony from Scavone regarding the anonymity feature is necessary to its invalidity claim. E-Centives' counsel merely "guess[ed]" Scavone's testimony would be relevant and stated that testimony from Mazza and Scavone "could well be important." Tr. 18, 23. Given the current record, the Court is not convinced that Scavone's testimony would be necessary and relevant to E-Centives' presentation of the anonymity issue to the jury.

E-Centives conceded at oral argument that Scavone is not a necessary witness to its presentation of the anticipation defense to the jury. Tr. 16-17. Finally, E-Centives maintains that when Coolsavings uses the licenses of its '648 patent to support validity by showing widespread use, E-Centives should be allowed to counter this evidence with any statements Coolsavings makes to minimize the impact of Coolsavings' license of the Von Kohorn patent during the validity phase of the trial. Thus, E-Centives believes that "factual issues involving what the Von Kohorn '874 patent discloses, what Mr. Scavone thought it disclosed when he sought the license, and why he sought the license will all be issues necessary to both inequitable conduct and the validity issues in the case." E-Centives' Reply, p. 13. E-Centives has failed to specifically show any need for Scavone's testimony. The fact that Coolsavings obtained a license from Von Kohorn may be presented during the validity phase of the trial without testimony from Scavone, and E-Centives may argue to the jury that such action undermines Coolsavings' position regarding the significance of the licenses of its own patent. The Court is also not persuaded that the testimony E-Centives seeks from

Scavone regarding the anonymity feature and the significance of Coolsavings' license of the Von Kohorn '874 patent is unavailable from other sources such as Mazza who is not trial counsel in the instant case.

At oral argument, E-Centives counsel also suggested that bifurcation "doesn't make sense" from an efficiency stand point because the trial judge will have to hold two separate trials. The Court disagrees. A separate bench trial of the inequitable conduct defense after the jury trial will not result in duplication of judicial efforts. The trial judge will be bound by any findings the jury makes on facts common to the legal and equitable claims, and after the jury trial, the district court will hear testimony concerning the limited issue of inequitable conduct.

### III. CONCLUSION

For the reasons stated above, the Court recommends that E-Centives' Motion for Disqualification be denied. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this notice. See Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. <u>Lorentzen v. Anderson Pest Control</u>, 64 F.3d 327, 330 (7th Cir. 1995).

ENTER:

*Nan R. Nolan* (signature)
**Nan R. Nolan**
**United States Magistrate Judge**

Dated: Aug 31, 2000